# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| CARL CAUGHEY, : | Case No. 3:08-cv-042 |
| Plaintiff, | |
| -vs- | Magistrate Judge Michael R. Merz |
| BENEFICIAL COMPANY LLC, | |
| Defendant. : | |

## DECISION AND ENTRY

This case is before the Court on Defendant Beneficial Company LLC's ("Beneficial") Motion for Summary Judgment. (Doc. 34). The parties have fully briefed the issues, (*Id.*, Doc. 41, 42), and the matter is ripe for decision on the merits.

The parties have consented to plenary magistrate judge jurisdiction pursuant to 28 U.S.C. §636c and the matter has been referred on that basis. (Doc. 14).

Plaintiff Carl Caughey filed this action against Beneficial in the Montgomery County Court of Common Pleas pursuant to Ohio Revised Code § 4112.01(A)(2), alleging that Beneficial discriminated against him on the basis of age. *Caughey v. Beneficial/HSBC Group*, No. 08-CV-282 (Mont. Cnty. Ct. C.P., filed Jan. 9, 2008)(Doc. 2). Beneficial removed the action to this Court on the basis of diversity of citizenship. (Doc. 1).

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157-59 (1970). Nevertheless, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a Rule 50 motion for judgment as a matter of law. *See, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.* The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

> The moving party
>
> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes

2

demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

With these principles in mind, the facts of this case for purposes of this motion and construed in the light most favorable to Mr. Caughey are as follows.

Beneficial is a consumer finance company in the United States with the primary business goal of lending money. Deposition of Toliver W. Jolly, Mar. 5, 2009, at 7 (filed July 24, 2009) (Doc. 36) ("Jolly Depo."). Its parent company is HSBC.[1] *Id.* Beneficial's structure was such that there were about four regions, about sixteen to eighteen divisions, about forty to fifty districts, and over one thousand branches. Deposition of Michele White, Mar. 5, 2009, at 25-27 (filed July 24, 2009) (Doc. 36-2).

Mr. Caughey, who was born on December 12, 1954, began working for Beneficial in November, 1978. Deposition of Carl Caughey, Sept. 29, 2008, at 7 and Ex. 1 thereto (filed Aug. 25, 2009)(Doc. 36) ("Caughey Depo."). Mr. Caughey became a branch manager in December,

---

[1] Although HSBC is the parent company of Beneficial, for purposes of the present Motion, particularly for ease of reference, the Court will refer to the corporate decision-maker as Beneficial.

3

1984, and just prior to that, he was an interim manager. *Id.* at 23. During the period December, 1984, through September, 2006, Mr. Caughey was the manager of the Dayton Eastown Branch, and in September, 2006, he became the manager of the Huber Heights Branch. *Id.* at 45. At that time, the Huber Heights Branch already had a manager but the Sugarcreek Branch did not have a manager. *Id.* Beneficial intended to move the Huber Heights Branch manager to the Sugarcreek Branch and put Mr. Caughey in place at the Huber Heights Branch. Mr. Caughey requested that Beneficial assign him to the Sugarcreek Branch rather than the Huber Heights Branch to eliminate the need to move two managers, but Mr. Jolly, Mr. Caughey's supervisor, rejected Mr. Caughey's request stating, "I want to put the young guy–let the young guy run–I'm going to put the young guy in Sugarcreek. This is the office for you, Huber Heights." *Id.* at 77; 209-11; 224-26. The Huber Heights Branch was referred to by some of Beneficial's management personnel as "the Geritol crowd". *Id.* at 211. Mike Lucas, who had been a supervisor, remarked that, "I've got to get some youth and some young people in [the Huber Heights] office." *Id.* Prior to Mr. Caughey's arrival, the Huber Heights Branch wasn't performing well and, in fact, was at the bottom half of the district. *Id.* at 49-50. In 2007, during Mr. Caughey's tenure as manager, the Huber Heights Branch was number one in the district in terms of performance. *Id.*

During his employment with Beneficial, Mr. Caughey was never reprimanded, never received a poor performance review, nor ever told that his job was in jeopardy. *Id.* at 77. In 2007, Mr. Caughey disagreed with several things Mr. Jolly had documented in his (Mr. Caughey's) mid-year performance review and as a result, Mr. Jolly changed Mr. Caughey's rating from a four to a three, with three reflecting a better review. *Id.* at 77-92.

Due to a business downturn in 2007, Beneficial decided to close or consolidate about

100 of its branches across the country and in November, 2007, it closed or consolidated 260 additional branches including two in the Dayton District. White Depo. at 17; *see also,* Jolly Depo. at 13[2]. As a result of the closings or consolidations of branches, there was a reduction in force ("RIF"). *Id*. The November, 2007, RIF is at issue in this case.

By the time of the November, 2007, RIF, the Eastown Branch had already been closed. *Id*. at 14. The Huber Heights Branch was still open and, in fact, was not going to be closed as a part of the November, 2007, process. *Id.* However, as a part of the "reorganization" and resultant RIF, Beneficial decided to eliminate two branch manager positions in the Dayton District. White Depo. at 26-28. Mr. Caughey was replaced by 30-year old Adam Turner as manager of the Huber Heights Branch as a part of the RIF. *Id.* at 158. The day before Mr. Caughey was replaced by Mr. Turner, the Huber Heights Branch was ranked first in the district, first in the division, thirteenth in the region, and seventy-fifth in the country. *Id.* at 37 and Ex. 1 thereto. The Huber Heights Branch accomplished these rankings despite the fact that it had only two available account executives for most of 2007, as well as the fact that the top account executive in the Branch did not work for about six months due to illness. *Id.* at 51-52.

The decision to close branches was made at the division level and was based on several factors including lending and growth opportunities in a particular market and the costs associated with closing a branch. *Id.* at 46. Jerry Hudgins, the Division General Manager, made the RIF recommendations and Ms. White, who was Senior Vice President of Human Resources and Regional Human Resources Director responsible for the Central Region where the Dayton Division was located, approved the RIF decisions. *Id.* at 18-19. Mr. Caughey was not involved in the

---

[2] On March 2, 2009, Beneficial announced that it would close all its branches by April 30, 2009. (Doc. 35, Ex. 15 thereto).

decisions to close branches, had no knowledge of the criteria Beneficial used to close a branch, and did not know how Beneficial made its decisions as to who would be a part of the RIF. Caughey Depo. at 173; 181.

Once Beneficial determined which branches it would close, it then re-allocated the positions that remained available by using RIF criteria. White Depo. at 36-38. RIF decisions were made based on the criteria in the following order:

First—time in role; not seniority but rather the time the employee had been in his or her current job;

Second—whether an employee was on any type of corrective action status;

Third—the employee's performance criteria;

Fourth—the employee's end of year 2006 annual performance rating;

Fifth—the employee's overall tenure; and

Sixth—whether the employee had any serious violations during his or her employment. *Id.* at 21-22.

Ms. White applied the criteria in order. *Id.* at 72. If all else was equal between or among employees, Ms. White would move to the next step. *Id.* To make the RIF decisions based on performance criteria at the third step, Ms. White used a spreadsheet which reflected the relevant data including new money averages % to goal and real estate units % to goal for all of the branch managers in the Dayton District. *Id.* 67-87. The RIF decisions were made based on the resulting numeric performance data. *Id.* If for some reason, a particular factor was not considered as to one individual, it was not considered as to all. *Id.* at 77-78. For example, Mr. Turner had been assigned to several branches during the year, so rather than considering certain year-to-date results, Ms.

White looked at the ninety-day results but did so with respect to Mr. Caughey as well. *Id.*

When Ms. White applied the RIF criteria, the person to first lose his branch manager position was thirty-nine year-ole Ali Niazi. *Id*. at 74-75. After losing his branch manager position, Mr. Niazi elected to accept Beneficial's offer to take a demotion and he remained in Beneficial's employ in another capacity. *Id.* at 73-75. The second person to lose his branch manager position was Mr. Caughey. *Id.* at 75-76. However, unlike Mr. Niazi, for financial reasons, Mr. Caughey declined Beneficial's offer to remain with Beneficial at an assistant manager. *Id.* at 16, 20; Jolly Depo. at 16; Caughey Depo. at 183-86. Mr. Jolly, who, as noted above, was Mr. Caughey's supervisor, had no input into the RIF decisions. *Id.* at 15; White Depo. at 18. Additionally, Mr. Jolly had no input into the decision to remove Mr. Caughey from the position of Huber Heights Branch manager. Jolly Depo. at 27-28.

Robert Campbell was the division manager at the time relevant to the RIF. White Depo. at 14-25. During a November 19, 2007, telephone conference call in which Mr. Caughey, Mr. Campbell, Ms. White, and Mr. Jolly participated, Mr. Campbell advised Mr. Caughey that there had been a reduction in work force and that he (Mr. Caughey) was being affected. Caughey Depo. at 183-86. Mr. Caughey inquired as to why he had been selected to lose his position as branch manager, but Mr. Campbell declined to give him a reason. *Id.* It was during that conference that Beneficial offered Mr. Caughey a position as an assistant manager which involved a reduction in pay. *Id.* During a telephone conversation on November 20, 2007, Mr. Caughey asked Mr. Campbell about the possibility of being assigned to the position of branch manager-at-large. *Id.* at 189. Mr. Caughey was aware that others had been offered that position "just a couple of months before". *Id.* Mr. Campbell advised Mr. Caughey that position was "not for [him]". *Id.* On November 21, 2007,

Mr. Caughey refused Beneficial's offer of a job as an assistant manager. *Id.* at 190-91.

Beneficial had offered Mr. Caughey a severance package which included twenty-nine and a half weeks of his base pay. *Id.* at 191-92. Mr. Caughey decided to reject the severance package but he never communicated his decision to Beneficial. *Id.* at 192. Mr. Caughey's last day of employment with Beneficial was November 30, 2007. *Id.* at 193. In December, 2007, Mr. Caughey became employed by J.P. Morgan Chase. *Id.* at 11.

Under Ohio law, an employer may not discriminate on the basis of age. *Morgan v. New York Life Ins., Co.,* 559 F.3d 425, 435 (6th Cir. 2009) (citation omitted). Age discrimination claims under Ohio Revised Code § 4112.02 are subject to the same legal standards as claims brought pursuant the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* ("ADEA"). *See, e.g., Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.,* 61 Ohio St.3d 607, 610 (1991); *Campbell v. PMI Food Equipment Group., Inc.,* 509 F.3d 776, 785 (6th Cir. 2007)(citation omitted).

The ADEA was prompted by a concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes that productivity and competence decline with age. *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993).

The ADEA prohibits discrimination in employment on the basis of age and not class membership. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308 (1996). Although the Supreme Court has never "squarely addressed" whether the *McDonnell Douglas* framework applies to age discrimination cases, it has assumed *arguendo* that it does and used that framework in its own analysis. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). A plaintiff must prove at least the following four elements to establish a *prima facie* case of age discrimination: (1) he was a member of the protected class; (2) he was subjected to an adverse employment action; (3) he was

qualified for the position; and (4) he was replaced by a younger person. *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 379 (6th Cir. 1993); *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 941 (6th Cir. 1987). The fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of an ADEA *prima facie* case. *O'Connor, supra*. However, the age gap must be "substantial" to support an inference of discrimination. *Bush v. Dictaphone Corp.*, 161 F.3d 363 (6th Cir. 1998). If plaintiff establishes these criteria, the burden of production passes to defendant to articulate a legitimate nondiscriminatory reason for its employment action. *Simpson,* 823 F.2d at 940. If such a reason is proffered, the employee bears the burden of showing that it is not the true reason, but instead was a pretext for discrimination. *Imwalle v. Reliance Medical Products, Inc.,* 515 F.3d 531, 544 (6th Cir. 2008). Even if these elements are established, plaintiff must still show that age was a determining factor in the adverse employment action against him, which is the ultimate question. *Simpson, supra*; *Ackerman v. Diamond Shamrock*, 670 F.2d 66 (6th Cir. 1982); *Blackwell v. Sun Electric Corp.,* 696 F.2d 1176 (6th Cir. 1983). To rebut the employer's proffered explanation, a plaintiff must show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge. *Martin v. Toledo Cardiology Consultants, Inc.,* 548 F.3d 405, 412 (6th Cir. 2009), *citing, Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). Under the first alternative, a plaintiff produces evidence that the proffered reasons are factually false; under the second, that while the proffered reasons would be sufficient to motivate an adverse employment action, they were not the real reasons in the case in suit; under the third, that similarly situated persons not in the protected class were better treated. *Manzer, supra*.

> In a work force reduction situation, the plaintiff has an additional burden:
>
>> When work force reductions by the employer are a factor in the decision, "the most common legitimate reasons" for the discharge are the work force reductions. By showing the other elements of a *McDonnell Douglas* [*v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)] case, a plaintiff has not presented any evidence indicating that the work force reductions are not the reasons for the discharge and therefore does not make out a *prima facie* case absent additional direct, circumstantial, or statistical evidence indicating that the employer singled out the plaintiff for impermissible reasons. *Barnes v. Gencorp.*, 896 F.2d 1457, 1465 (6th Cir. 1990).
>>
>> Our conclusion would not change even if a plaintiff additionally demonstrated that younger persons were retained in other jobs which the plaintiff was qualified to perform. A different result would allow every person age 40-and-over to establish a prima facie case of age discrimination if he or she was discharged as part of a work force reduction.

*Barnes v. GenCorp, Inc.,* 896 F.2d 1457, 1465 (6th Cir. 1990). Therefore, in a work force reduction case, the plaintiff must also produce "direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Id.*; *Allen v. Diebold*, 33 F.3d 674, 677 (6th Cir. 1994) (citation omitted).

There is no dispute that Mr. Caughey was over forty when he was subject to an adverse employment action, to wit: removed as manager of the Huber Heights Branch; that he was qualified for the position as manager of the Branch; and that he was replaced by a younger person, 30-year old Adam Turner, as manager. However, because Beneficial's decision to terminate Mr. Caughey's employment was a part of an RIF, Mr. Caughey has the additional burden of establishing that Beneficial "singled [him] out ... for discharge for impermissible reasons." Mr. Caughey has failed to do so.

Simply stated, Beneficial used objective criteria in determining whose employment

10

it would terminate as a part of the RIF. Additionally, Beneficial applied those criteria equally as to each employee. Although Mr. Caughey challenges Beneficial's application of the criteria as to Mr. Turner, Mr. Caughey's argument must fail. As Ms. White's testimony establishes, Mr. Turner had worked at several branches during the year. Therefore, when she applied the criteria, Ms. White looked at the ninety-day new money and real estate units rather than at the year-to-date results. However, she did the same comparison with respect to Mr. Caughey. In other words, Ms. White did not use one measure for Mr. Turner and a different one for Mr. Caughey. Rather, Ms. White applied the criteria uniformly. Mr. Caughey has not demonstrated otherwise.

Mr. Caughey's position is that he was the only branch manager over the age of forty whose employment Beneficial terminated as a part of the RIF and that this is evidence of age discrimination by Beneficial. In contrast to Mr. Caughey's position, however, the evidence establishes that the RIF process resulted in the Dayton District's losing two branch manager positions. The first branch manager in the Dayton District who lost his branch manager job as a part of the RIF was Mr. Niazi, who was thirty-nine years old at the time of the RIF. The record clearly establishes that Beneficial, in fact, attempted to keep Mr. Caughey in its employ. When the RIF resulted in Mr. Caughey losing his position as Huber Heights Branch manager, Beneficial offered him an assistant manager position, which he did not accept. In contrast, Mr. Niazi accepted another position with Beneficial.

Mr. Caughey also argues that Beneficial failed to consider him for a position as an at-large branch manager and that such failure is another indication of its discrimination against him on the basis of age. However, there is no evidence that at the time of the RIF there was an "at-large" position available. Mr. Caughey simply testified that he had inquired about the position and that he

11

was informed by Mr. Campbell that it "was not for [him]". Additionally, Ms. White testified that if there had been an at-large position available and if Mr. Caughey had been willing to relocate to any office within the region, he would have been considered for the position. Nevertheless, there is no evidence of the availability of such position at the time of the RIF.

Considering all of these undisputed facts, Mr. Caughey has failed to satisfy the higher burden to successfully establish a *prima facie* case in a RIF situation.

Assuming arguendo that Mr. Caughey had established a *prima facie* case of age discrimination, Beneficial has clearly come forward with a legitimate, non-discriminatory business reason for terminating Mr. Caughey's employment as the Huber Heights Branch Manager. Beneficial's performance declined and as a result it determined that it would have to make a reduction in its workforce. Beneficial used objective criteria in determining which employees would be affected by the RIF. Mr. Caughey has failed to come forth with any evidence whatsoever which would tend to establish that the RIF had no basis in fact or did not actually motivate Beneficial or that it was insufficient to motivate its actions. While Mr. Caughey may disagree with Beneficial's decisions, the RIF, and the criteria Beneficial used in implementing the RIF, he has failed to establish that Beneficial discriminated against him on the basis of his age.

At this juncture, the Court notes that Mr. Caughey claims that the comments Beneficial personnel made about the Huber Heights Branch being "the Geritol crowd" as well as Mr. Jolly's comments that he was going to "put the young guy–let the young guy run–I'm going to put the young guy in Sugarcreek", are direct evidence of age discrimination.

In assessing the relevancy of a discriminatory remark, the court looks first at the identity of the speaker. *Ercegovich v. Goodyear Tire and Rubber Co.,* 154 F.3d 344, 354 (6th Cir.

1998). An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decision is not considered indicative of age discrimination. *Id.*(citation omitted). Isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination. *Ercegovich,* 154 F.3d at 354-55.

First, Mr. Caughey has failed to identify with any specificity the management personnel who allegedly made the "Geritol crowd" comments. It is impossible, then, to determine what, if any, authority those individuals had over Mr. Caughey. Second, Mr. Jolly's isolated comment about letting the "young guy" have the Sugarcreek Branch is insufficient to establish a discriminatory intent with respect to the later RIF termination. In addition, Mr. Jolly had absolutely no input into the RIF process. The evidence establishes that the RIF was an operational-level decision that and human resources helped implement the RIF. Mr. Jolly did not have any input into the decision to remove Mr. Caughey as Huber Heights Branch manager as a part of the RIF. Finally, although Mr. Caughey has referred to Mr. Lucas' remark that he had to get some youth and some young people into the Huber Heights office, there is no evidence that Mr. Lucas had any managerial authority as to Mr. Caughey or that he was a part of the RIF decision-making or implementing processes.

This Court concludes that Mr. Caughey has failed to establish a *prima facie* case of age discrimination in violation of O.R.C. § 4112.01(A)(2). Accordingly, Defendant Beneficial Company, LLC's Motion for Summary Judgment, (Doc. 34), is well taken and is granted. The Clerk shall enter judgment in favor of Defendant Beneficial Company, LLC and against Plaintiff Carl

Caughey dismissing the within Complaint with prejudice.

September 21, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge